IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| DOROTHY E. SMITH, Individually and as Executrix of the Estate of JULIAN JACKSON SMITH, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:16CV379 |
| 3M COMPANY, et al. | ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Plaintiff, individually and as executrix of the estate of Julian Jackson Smith, initiated this wrongful death action. (ECF Nos. 1, 278.) Before the Court are the following motions: (i) Defendant Farmers Chemical Association, Inc.'s ("Farmers Chemical") Motion for Summary Judgment, (ECF No. 411); and (ii) Defendant Schlage Lock Company, LLC's ("Schlage") Motion for Summary Judgment, (ECF No. 421). For the reasons set forth below, the Court will grant each motion.

**I.  BACKGROUND**

Julian Jackson Smith ("Mr. Smith") was diagnosed with mesothelioma in or about February, 2016 and died on December 13, 2017. (ECF No. 278 ¶¶ 2, 10; ECF No. 412-5 at 205.) The Complaint[1] alleges, in relevant part, that Mr. Smith "experienced occupational

---

[1] References to the "Complaint" refer to the Second Amended Complaint, (ECF No. 278), which is the operative complaint.

exposure to asbestos while working as a plumber and pipefitter from approximately 1965 to 1982 out of the Plumbers' and Pipefitters' Union Local 585 of Durham, North Carolina." (ECF No. 278 ¶ 18(a).) According to the Complaint, Mr. Smith's exposures occurred "on the premises of various industrial facilities, including, but not limited to, those owned and/or controlled by" Farmers Chemical and Schlage. (*Id.*)

The Complaint names a number of defendants, including Farmers Chemical and Schlage, against whom the following seven causes of action are alleged: (i) negligence; (ii) product liability—inadequate design or formulation; (iii) breach of implied warranty; (iv) negligence, negligent retention and supervision; (v) gross negligence; willful, wanton, and reckless conduct; (vi) false representation; and (vii) failure to warn. (*Id.* ¶¶ 21–106.) The Complaint also includes an eighth cause of action which alleges that the "Premise and Contractor Defendants"[2] were "negligent, grossly negligent and malicious, and committed certain intentional acts, all of which were the proximate cause of the disease and injuries resulting in mesothelioma from exposure to asbestos." (*Id.* ¶¶ 18(a), 107–115.) In addition, the Complaint includes claims for loss of consortium, as well as compensatory and punitive damages. (*Id.* ¶¶ 116–120.) Farmers Chemical and Schlage each move for summary judgment as to all claims alleged by Plaintiff. (*See* ECF Nos. 411, 421.)

## II.  STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

---

[2] Farmers Chemical and Schlage are included among the defendants which are defined collectively in the Complaint as "Premises and Contractor Defendants." (ECF No. 278 ¶ 18(a).)

R. Civ. P. 56(a). A dispute is "genuine" if the evidence would permit a reasonable jury to find for the nonmoving party, and "[a] fact is material if it might affect the outcome" of the litigation. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568 (4th Cir. 2015) (internal quotation marks omitted). The role of the court is not "to weigh the evidence and determine the truth of the matter" but rather "to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). When reviewing a motion for summary judgment, the court must view the evidence and "resolve all factual disputes and any competing, rational inferences in the light most favorable" to the nonmoving party. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996)).

In cases where the nonmovant will bear the burden of proof at trial, the party seeking summary judgment bears the initial burden of "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, then the burden shifts to the nonmoving party to point out "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) (emphasis omitted)). In so doing, "the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013). The nonmoving party must support its assertions by "citing to particular parts of the record," or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1); *see Celotex*, 477 U.S. at 324. The judicial inquiry on summary

3

judgment "thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993).

## III. DISCUSSION

### A. Farmers Chemical's Motion for Summary Judgment

Farmers Chemical argues that it "is entitled to summary judgment in this matter because it was not in control of the work site at the Farmers Chemical Plant in Tunis, North Carolina, where Mr. Smith claimed exposure to asbestos." (ECF No. 412 at 11.) Rather, according to Farmers Chemical, during the period of Mr. Smith's alleged exposure on Farmers Chemical's premises, the jobsite was controlled by DM Weatherly Company ("DM Weatherly"), Plaintiff's employer and the company with which Farmers Chemical contracted to build the facility. (*Id.* at 11–12.) In response, Plaintiff "asserts that [Mr.] Smith's daily exposure to asbestos on the Farmers Chemical premises contributed to causing his mesothelioma." (ECF No. 462 at 1.) Plaintiff further argues that "Farmers Chemical presents no evidence supporting any supposed relinquishment of control or possession of the premises to DM Weatherly or any other contractor." (*Id.* at 14.)

A court exercising diversity jurisdiction applies the substantive law of the forum state.[3] *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938); *Scott v. Watsontown Trucking Co.*, 533 F. App'x 259, 262 (4th Cir. 2013). Accordingly, in North Carolina, "[t]o state a prima facie negligence claim of premises liability, [the plaintiff] must show that [the defendant] had control over the

---

[3] The Court exercises diversity jurisdiction in this matter pursuant to 28 U.S.C. § 1332(a), because the amount in controversy exceeds $75,000 and Plaintiff, a citizen of North Carolina, is diverse from all defendants, none of which are citizens of North Carolina. (ECF No. 278 ¶¶ 4, 9.)

4

area where [the decedent] worked. . . . In other words, 'control is a prerequisite of liability.'" *Finch v. BASF Catalysts LLC*, No. 1:16-CV-1077, 2018 WL 3941978, at *4 (M.D.N.C. Aug. 16, 2018) (quoting *Wilkerson v. Norfolk S. Ry. Co.*, 566 S.E.2d 104, 111 (N.C. Ct. App. 2002)).

In arguing that Farmers Chemical bears the burden of presenting evidence to show that it relinquished control or possession of the jobsite, (*see* ECF No. 462 at 11–18), Plaintiff misapprehends each party's burden at this juncture. Where, as in this case, the party moving for summary judgment carries its burden by arguing that an absence of evidence exists to establish a fact essential to the nonmovant's case, the burden of production then shifts to the nonmovant. *See Cray Commc'ns, Inc. v. Novatel Comput. Sys., Inc.*, 33 F.3d 390, 394 (4th Cir. 1994) (concluding that a movant's argument that an absence of evidence exists as to the nonmovant's claim is sufficient to shift the burden of production to the nonmovant); *Nat'l Ass'n of State Aviation Officials v. ACSYS, Inc.*, No. Civ. A. DKC2000-2236, 2001 WL 720637, at *2 (D. Md. June 23, 2001) ("Plaintiff's burden on summary judgment mirrors [her] burden at trial: [she] must come forward now to forecast admissible evidence sufficient to sustain [her] burden of proof."). To carry this burden of production, a nonmovant asserting the existence of a genuine issue of material fact must support this assertion by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). Thus, to survive summary judgment here, Plaintiff must show that the record contains sufficient facts for a reasonable juror to conclude that, during the time that Mr. Smith worked at the Farmers Chemical jobsite and the alleged exposure occurred, Farmers Chemical exercised sufficient control over the premises to subject it to liability for Mr. Smith's injury.

The Court concludes that Plaintiff has failed to meet the burden of production required to survive summary judgment. Specifically, the evidence in this case shows that for approximately 18 months, beginning in or about 1969, Mr. Smith was employed by DM Weatherly as a pipefitter working on the original construction of a fertilizer plant for Farmers Chemical in Tunis, North Carolina.[4] (ECF No. 412-5 at 87, 91, 96; ECF No. 412-6 at 13, 52, 54; *see also* ECF No. 412-3 at 4–5.) DM Weatherly was the general contractor employed by Farmers Chemical to build its fertilizer plant. (ECF No. 412-6 at 13, 52, 53.) According to Mr. Smith, DM Weatherly employed approximately 150 to 200 employees "at various times" to erect a newly constructed facility. (*Id.* at 13, 53.) Mr. Smith further testified that while employed at the Farmers Chemical jobsite, he received all of his instructions, tools, and materials from DM Weatherly. (*Id.* at 53–55.) When asked whether he recalled "any communications with an employee of Farmers Chemical" during his time on the jobsite, Mr. Smith responded, "[n]ot that I know of." (*Id.* at 54.) Plaintiff points to no evidence from which a reasonable jury could find that, after employing DM Weatherly to construct its

---

[4] Mr. Smith testified that following his initial work on the construction of the Farmers Chemical facility, he returned to the Farmers Chemical jobsite several years later, on two separate occasions, to perform repair work during shutdown periods. (ECF No. 412-6 at 55; ECF No. 423-3 at 27–28.) According to Mr. Smith, during the first shutdown period on the Farmers Chemical jobsite (which lasted for approximately one week), he was employed by Brock and Levins Company, "an outfit out of Tennessee," and he performed valve installation work "[i]n the high pressure line . . . in the ammonia plant." (ECF No. 412-6 at 55; ECF No. 423-3 at 27.) Mr. Smith testified that he did not think that the high pressure line was insulated. (ECF No. 412-6 at 55.) Mr. Smith further testified that during his work on the second shutdown at the Farmers Chemical jobsite, the shutdown period lasted for approximately two or three weeks, and his job function consisted of "rearrang[ing] some piping" near a "package boiler." (ECF No. 423-3 at 27, 34.) Mr. Smith could not recall his employer during this second shutdown period, testifying that "[i]t may have been DM Weatherly but it could not have been[;] I don't remember." (*Id.* at 34.) Mr. Smith further testified that while the pipes were insulated, he had "no idea" whether asbestos-containing products were present during this repair job. (*Id.*)

fertilizer plant, Farmers Chemical or its employees retained control of the jobsite or the manner in which the facility was constructed. (*See* ECF No. 462.) "Because control is a legal prerequisite for premises liability, [Farmers Chemical] is entitled to summary judgment" on Plaintiff's eighth cause of action.[5] *Finch*, 2018 WL 3941978, at *4.

Even assuming, however, that Plaintiff could point to specific evidence establishing Farmers Chemical's control over the jobsite, there is insufficient evidence in the record to establish actual exposure to asbestos-containing products for which Farmers Chemical is responsible. Under North Carolina law, a plaintiff bringing an action arising from asbestos exposure must forecast evidence showing actual exposure to the alleged offending products to survive summary judgment. *Wilder v. Amatex Corp.*, 336 S.E.2d 66, 67–68 (N.C. 1985). The Fourth Circuit has concluded that North Carolina law requires "the plaintiff in a personal injury asbestos case '[to] prove more than a casual or minimum contact with the product' containing asbestos in order to hold [the defendant] liable." *Jones v. Owens-Corning Fiberglas Corp.*, 69 F.3d 712, 716 & n.2 (4th Cir. 1995) (quoting *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156, 1162 (4th Cir. 1986)). Rather, a plaintiff in such a case must satisfy the "frequency,

---

[5] As an exception to the general rule precluding liability for a premises owner who lacks "control of the place and of the work" being conducted on his property, *Wilkerson*, 566 S.E.2d at 111, liability for injury may extend to the premises owner where the work undertaken by the independent contractor involves an inherently dangerous activity. *Commee v. Nucor Corp.*, 173 F. App'x 209, 211 (4th Cir. 2006) (per curiam). This exception is, however, inapplicable here given that North Carolina courts have held that building construction is not an inherently dangerous activity. *See Woodson v. Rowland,* 407 S.E.2d 222, 236 (N.C. 1991) ("[T]his Court has held as a matter of law that certain activities resulting in injury are not inherently dangerous. These activities include . . . building construction." (citing *Vogh v. F.C. Geer Co.,* 88 S.E. 874 (N.C. 1916)); *McCorkle v. N. Point Chrysler Jeep, Inc.*, 703 S.E.2d 750, 753 n.3 (N.C. Ct. App. 2010) (stating that "painting and construction are not inherently dangerous"); *Harris v. Tri-Arc Food Sys., Inc.*, 598 S.E.2d 644, 647 (N.C. Ct. App. 2004) ("In North Carolina . . . it has long been recognized that ordinary building construction is generally not an inherently dangerous activity.").

regularity and proximity" test, which requires the plaintiff to introduce "evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked." *Lohrmann*, 782 F.2d at 1162–63 (holding evidence of exposure to an asbestos-containing product "on ten to fifteen occasions of between one and eight hours duration" insufficient to hold the product's manufacturer liable); *see also Pace v. Air & Liquid Sys. Corp.*, 642 F. App'x 244, 247 (4th Cir. 2016) (terming the above-described test adopted in *Lohrmann* the "'frequency, regularity, and proximity' test").

Mr. Smith testified that during the eighteen months he worked on construction at the Farmers Chemical jobsite, his pipefitting duties included running underground water lines, steam lines, and chemical lines. (ECF No. 412-5 at 88.) According to Mr. Smith, he was also responsible for running pipe lines to turbines installed in the facility, and although the turbines were insulated, he was unsure whether such insulation contained asbestos. (ECF No. 412-6 at 42–44.) Mr. Smith further testified that during the last seven or eight months of his tenure at the jobsite, there was a significant amount of daily insulation work, including the cutting of insulation, within his proximity at the jobsite. (ECF No. 412-5 at 89–91; ECF No. 412-6 at 55.) According to his testimony, the cutting of insulation "[o]ccasionally" created dust which he "[c]ould have" inhaled. (ECF No. 412-5 at 89–90.) This evidence is too vague and speculative to satisfy Plaintiff's burden of demonstrating that Mr. Smith was actually exposed to asbestos-containing products for which Farmers Chemical is responsible. *See Hill v. Michelin N. Am., Inc.*, 252 F.3d 307, 315 n.3 (4th Cir. 2001) (holding "vague" deposition testimony "insufficient to create a genuine issue of material fact"). In addition, as articulated by the Fourth Circuit in *Lohrmann*, "the mere proof that the plaintiff and a certain asbestos product

8

are at the [same location] at the same time, without more, does not prove exposure to that product." *Lohrmann*, 782 F.2d at 1162.

The Court concludes that the evidence here, construed in the light most favorable to Plaintiff, is insufficient to satisfy the frequency, regularity, and proximity test set forth in *Lohrmann*. Farmers Chemical is therefore entitled to judgment as a matter of law.

### B. Schlage's Motion for Summary Judgment

Like Farmers Chemical, Schlage moves for summary judgment against Plaintiff based on "the absence of evidence against [it]." (ECF No. 423 at 1.) Specifically, Schlage first argues that, with respect to causation, "[t]he record is void of any evidence that Mr. Smith was exposed to any asbestos during [his] work" as a plumber/pipefitter on the construction of the Schlage Lock facility near Rocky Mount, North Carolina. (*Id.* at 2.) Schlage next argues that "[e]ven if there was evidence in the record to establish asbestos exposure at the Schlage facility, the Plaintiff cannot recover from Schlage under any premise[s] liability theory" based on the facts present here. (*Id.* at 9.) Plaintiff argues, in response, that triable issues exist as to whether Mr. Smith's work at the Schlage facility exposed him to asbestos and whether Schlage, as the premises owner, owed a duty of care to Mr. Smith. (ECF No. 460 at 9, 12.)

As previously stated, because Schlage has argued that there is an absence of evidence to establish an essential element of the nonmovant's case, *i.e.* causation, the burden of production then shifts to Plaintiff. *See Cray Commc'ns, Inc.*, 33 F.3d at 394 (concluding that a movant's argument that an absence of evidence exists as to the nonmovant's case is sufficient to shift the burden of production to the nonmovant). Plaintiff primarily relies on Mr. Smith's testimony that he was "constantly present when insulators cut and installed pipe insulation on

9

steam and water lines throughout the building, . . . and . . . that he inhaled the dust created by such work." (ECF No. 460 at 1.) On the record before the Court, however, this evidence, without more, is insufficient to satisfy Plaintiff's burden under *Lohrmann*. *See Lohrmann*, 782 F.2d 1162–63 (stating that a personal injury plaintiff in an asbestos case must introduce "evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked").

The record shows that in 1972, Mr. Smith was employed by Embree Reed, Inc., a plumbing subcontractor, to perform pipe installation in a new Schlage Lock facility being constructed in Rocky Mount, North Carolina. (*See* ECF No. 412-6 at 14, 59, 62, 64.) Mr. Smith worked at the Schlage jobsite for approximately eight to nine months during which he primarily installed steam and water piping lines used for heating and cooling the building. (ECF No. 412-5 at 111; ECF No. 412-6 at 14.) Although Mr. Smith did not work directly with insulation, he testified that there were insulators working on the jobsite who installed and cut insulation, within close proximity. (ECF No. 412-5 at 111, 114–15.) While he testified that the cutting of insulation created dust that he inhaled, when asked whether any of the insulation at the facility contained asbestos, Mr. Smith responded: "No" and "I don't know." (ECF No. 412-6 at 65.) When further asked whether the insulation installed in the facility was non-asbestos containing insulation, Mr. Smith responded: "Could have been. I don't know." (*Id.*)

In addition, Schlage's corporate representative, Gladys Thomas, testified that the Schlage Lock facility, constructed in 1972, was "part of another project where another facility was built in 1976" in Security, Colorado. (ECF No. 423-4 at 11, 12.) According to Ms.

10

Thomas, "[b]oth plant layouts, structure, [and] design were similar[,] [and] . . . we believed the buildings were spec'd to be asbestos free on purpose." (*Id.* at 11.) Ms. Thomas also testified that while manufacturing equipment has since been removed from the Schlage facility, the original insulated piping system installed in the facility still remains. (*Id.* at 27, 43.) The record reflects that on June 18, 2018, "[t]wo bulk asbestos samples" were collected from the original insulation for asbestos analysis. (ECF No. 423-5 at 2–5.) The test results revealed that "none of the different layers of material in either sample contained asbestos." (*Id.* at 423-5 at 2.)

In light of this evidence, including Mr. Smith's own testimony that he did not know whether the insulation to which he was exposed at the Schlage jobsite contained asbestos, and further, that asbestos-free insulation "[c]ould have" been installed, (ECF No. 412-6 at 65), Plaintiff has "failed to present evidence that would allow a jury to find [she has] carried [her] burden of proof on an essential element of [her] case" against Schlage. *Arbogast v. A.W. Chesterton Co.*, 197 F. Supp. 3d 807, 813 (D. Md. 2016) (finding that where the evidence shows that some of the defendant's products to which plaintiff was exposed "*may* have had asbestos in them simply is not enough evidence to create a genuine dispute of material fact"); *see also Hill*, 252 F.3d at 315 n.3 (holding "vague" deposition testimony "insufficient to create a genuine issue of material fact"). Schlage is therefore entitled to judgment as a matter of law.

The Court further concludes that, even if Plaintiff pointed to sufficient evidence of causation, for the same reasons set forth above with respect to Farmers Chemical's motion for summary judgment, (*see supra* at 4–6), Plaintiff's premises liability claims against Schlage fails. Specifically, there is an absence of evidence in the record showing that Schlage exercised control over the jobsite or the work conducted by Mr. Smith during the facility's construction.

*See Wilkerson*, 566 S.E.2d at 111 (stating that "control is a prerequisite of liability," and "[i]n the absence of any control of the place and of the work there [is] a corresponding absence of any liability incident thereto" (quoting *Mack v. Marshall Field & Co.*, 12 S.E.2d 235, 237 (N.C. 1940))). *See also Commee v. Nucor Corp.*, 173 F. App'x 209, 212 (4th Cir. 2006) ("North Carolina appellate courts have found that where an independent contractor is 'free to perform its job according to its own independent skill, knowledge, training, and experience,' liability . . . will not attach to the . . . landowner." (quoting *Hooper v. Pizzagalli Constr. Co.*, 436 S.E.2d 145, 149 (N.C. Ct. App. 1993))). Here, the evidence shows that during Mr. Smith's eight or nine–month tenure at the Schlage jobsite, he was directly employed by Embree Reed, Inc., a plumbing subcontractor from whom he received instruction on "what to do" at the jobsite. (ECF No. 412-6 at 59.) Mr. Smith testified as follows:

> Q. Okay. And Embree Reed was your employer?
> A. Right.
> Q. And they paid you your checks?
> A. Right.
> Q. And told you what to do, correct?
> A. Right.
> Q. Okay. So that was at the Schlage Lock factory?
> A. Right.
> Q. Right. Did -- but Schlage never told you what to do --
> A. No.
> Q.-- when you were there? It was a brand new facility, it wasn't under operation at that time, correct?
> A. Um-hmmm.
> Q. Okay. Understood. Did you ever even see a Schlage employee there?
> A. May have, but they didn't -- I didn't have no interchange with them.
> Q. They just contracted out and said I want this facility built?
> A. As far as I know.

12

(*Id.*) Therefore, without evidence showing that Schlage exercised control over Mr. Smith's work area, Plaintiff has failed to create a genuine issue of material fact as to premises liability claims against this defendant. Accordingly, Schlage is entitled to judgment as a matter of law on Plaintiff's premises liability claims.

> C. **Remaining Seven Causes of Action against Defendants Farmers Chemical and Schlage**

In addition to Plaintiff's eighth cause of action alleging negligence arising from premises liability, Plaintiff's Complaint also includes seven additional causes of action which sound in product liability.[6] In North Carolina, a product liability action may be brought against a manufacturer[7] or seller[8] "for or on account of personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formulation, development of standards, preparation, processing, assembly, testing, listing, certifying, warning, instructing, marketing, selling, advertising, packaging, or labeling of any product." N.C. Gen. Stat. § 99B-1(3). In this case, there is no evidence that Farmers Chemical or Schlage manufactured or sold

---

[6] In the Complaint, Plaintiff alleges the following causes of action: (i) negligence; (ii) product liability—inadequate design or formulation; (iii) breach of implied warranty; (iv) negligence, negligent retention and supervision; (v) gross negligence; willful, wanton, and reckless conduct; (vi) false representation; and (vii) failure to warn. (ECF No. 278 ¶¶ 21–106.) Under North Carolina law, a product liability action may be "premised on either negligence or on the contract principles of warranty." *Red Hill Hosiery Mill, Inc. v. MagneTek, Inc.*, 530 S.E.2d 321, 325–26 (N.C. Ct. App. 2000).

[7] North Carolina's product liability statute defines a "Manufacturer" as "a person or entity who designs, assembles, fabricates, produces, constructs or otherwise prepares a product or component part of a product prior to its sale to a user or consumer, including a seller owned in whole or significant part by the manufacturer or a seller owning the manufacturer in whole or significant part." N.C. Gen. Stat. § 99B-1(2).

[8] North Carolina's product liability statute defines a "Seller" as "a retailer, wholesaler, or distributor, and means any individual or entity engaged in the business of selling a product, whether such sale is for resale or for use or consumption. 'Seller' also includes a lessor or bailor engaged in the business of leasing or bailment of a product." *Id.* § 99B-1(4).

any asbestos-containing product to which Mr. Smith is alleged to have been exposed. Accordingly, to the extent the remaining causes of action in the Complaint (*i.e.*, causes of action 1–7) are alleged against Farmers Chemical and Schlage, these defendants are entitled to judgment as a matter of law on such claims.

For the reasons stated herein, the Court enters the following:

**ORDER**

IT IS THEREFORE ORDERED that Defendant Farmers Chemical Association, Inc.'s Motion for Summary Judgment, (ECF No. 411), is GRANTED and that this defendant is dismissed from this action.

IT IS FURTHER ORDERED that Defendant Schlage Lock Company, LLC's Motion for Summary Judgment, (ECF No. 421), is GRANTED and that this defendant is dismissed from this action.

This, the 11th day of March, 2019.

/s/ Loretta C. Biggs
United States District Judge